UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AMANDA PERRY,

                Plaintiff,                      Case No. 15-cv-11040

v.                                            Honorable Thomas L. Ludington

COVENANT MEDICAL CENTER, Inc.,

                Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION IN LIMINE, EXCLUDING EVIDENCE, AND SCHEDULING TRIAL DATE

Plaintiff Amanda Perry filed suit against her former employer, Defendant Covenant Medical Center ("Covenant") on March 19, 2016, claiming that she was wrongfully terminated from her position as an office coordinator for a group of physicians.  Specifically, Perry claims that Covenant violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq*., and Michigan's People with Disabilities Civil Rights Act ("PWDCRA") when it terminated her employment.

On December 21, 2015 Defendant Covenant filed a motion for summary judgment, seeking judgment on both of Perry's claims. Mot. for Summ. J., ECF No. 18.  Because Plaintiff met its burden to demonstrate material questions of fact, Defendant's motion was denied. Defendant now brings a motion in limine seeking to exclude historical information and medical records regarding the psychological trauma underlying Plaintiff's diagnoses of post-traumatic stress disorder and bipolar disorder, which in turn underlie her claim of disability.  Because Defendant does not dispute Plaintiff's claim of disability or her entitlement to FMLA leave, the

psychological evidence is not related to any claim or defense in this matter, and is therefore irrelevant. Defendant's motion in limine will be granted.

## I.

Plaintiff Perry began her employment with Defendant Covenant on September 17, 2010 as a part-time biller. Mot. for Summ. J. Ex. 1. She eventually received a full-time position, and was then promoted to the position of Office Coordinator on August 26, 2012. *Id.* at Ex. 2. In her new position, her initial assignment was to coordinate the physician practices at Covenant's Bridgeport and Frankenmuth locations. *Id*. at Ex. 3.

On March 4, 2014 Plaintiff Perry requested intermittent FMLA leave in order to take care of her son, who had been in a car accident. *Id*. at Ex. 7. Human resources approved the leave request on March 5, 2014. *Id*. Perry received mostly positive reviews throughout her time with Covenant, and an "Exceeding Expectations" review as recently as May 3, 2014. Defendant alleges that during the late spring and early summer of 2014, however, Perry experienced a number of performance issues at work.

Perry alleges that in the summer of 2014 she began suffering from numerous mental health issues, both resurgent and newly diagnosed. Perry testified that in July of 2014 she informed Ms. Kreuger that she had previously been diagnosed with bipolar disorder. Perry Dep. 23-24. Perry testified that she informed Ms. Kreguer of her diagnosis because she was "crying nonstop", "having suicidal feelings" and that she "just wanted to die, but [] had to stay alive for her grandson and kids." *Id*. at 29-30. She also testified that she had not yet been diagnosed with Post-Traumatic Stress Disorder at that time and "didn't know what was going on." *Id*. at 24. During her deposition, she acknowledged that she was worried about her mind shattering, and was not capable of working at that time. *Id*. at 30-31. Accordingly, on July 28, 2014, Perry

requested intermittent leave under the FMLA for her own serious health condition, which as approved by Covenant on August 5, 2014.

Perry testified that she initially took just a day or two off, but then took off from August 12 to August 14. Perry Dep. 25, 28. She testified that she met with Ms. Krueger after returning to work that Friday, August 15, 2014. *Id.* During the meeting, Ms. Krueger informed Perry that she had been in contact with HR, and that they thought it best if Perry went on continuous leave to "get it together" and told Perry that she needed to be able to perform her job at 100 percent functionality upon her return. *Id*. at 26. Perry testified she was not capable of working at that time, and she agreed with Ms. Krueger that she needed to take time off to get herself together. Perry Dep. 30-31.

Upon returning from her continuous leave on October 6, 2014 Perry discovered that Covenant had reorganized the responsibilities of three out of the four office coordinators while she was out on leave. Perry testified that she was not allowed to retrieve her log-in books and files where she had left them at her former office, that Perry would have to e-mail Ms. Krueger her continuing FMLA time off requests, and that Perry was responsible for making arrangements to have her responsibilities covered when she needed to be out.

Two weeks after returning from FMLA leave, on October 21, 2014, Ms. Krueger placed Perry in Step One of Covenant's progressive disciplinary procedure. Ms. Krueger documented that she had verbally counseled Perry regarding violations of Covenant's standards of conduct related to an incident with a patient who had called in to renew his prescriptions. Perry did not progress to Step Two discipline, but instead received Step Three disciplinary counseling on November 18, 2014. The Step Three discipline was based on two instances in which Perry was alleged to have communicated poorly with her subordinates, and one incident in which Perry

allegedly cried and displayed "unprofessional emotional behavior" in front of patients while working at the front desk in one of Covenant's offices.

After her Step-Three disciplinary counseling, Perry applied for review of her discipline pursuant to Covenant's Alternative Dispute Resolution appeal procedure. Ex. 17. Pursuant to that process, an employee may submit documentation and submit witnesses to challenge disciplinary actions. *Id*. Perry asked two subordinates to give statements on her behalf. While one of the subordinates provided a statement upon Perry's request, the other did not. Instead, she texted Perry to say, "Mandy I feel bad for what your [sic] going through right now. I just feel like with me being new I don't really want to get involved. I was thinking over the weekend and I don't recall the details of what we discussed. I'm sorry."

Perry's attempt to obtain witness statements ultimately led to her Step Four discharge. The Step Four report notes that Perry's conduct constituted "[f]alsifying claims, records, or reports including incident reports…" and "[i]mmoral, indecent, illegal, or unethical or dishonest conduct or behavior" under Policy #509. Perry was discharged, effective November 25, 2014.. Perry also received a notice of termination, stating that she had been discharged due to her "[i]nability to perform as an effective leader." Perry attempted to challenge the termination decision, which was first upheld by Ms. Krueger on December 8, 2014, and again upheld by the vice president of the Covenant physician network, David H. Nall, on January 12, 2015. Perry responded by filing the present action.

## II.

Defendant Covenant now moves to exclude evidence of Plaintiff Perry's past psychological trauma as irrelevant and unduly prejudicial. Under the Federal Rules of Evidence, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if "(a) it has

any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or Supreme Court prescribed rules provide otherwise. Fed. R. Evid. 402. Relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. District courts are given broad discretion in making determinations of admissibility based on considerations of relevance and prejudice. *See Tompkin v. Philip Morris USA*, *Inc*., 362 F.3d 882, 897 (6th Cir. 2004).

**A.**

Defendant Covenant first argues that Plaintiff Perry's psychological history is irrelevant to her FMLA retaliation claim. To succeed on her FMLA claim, Plaintiff has the initial burden of establishing a prima facie case of retaliation by showing: (1) Plaintiff was engaged in a statutorily protected activity; (2) Defendant knew that Plaintiff was exercising her FMLA rights; (3) Plaintiff suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir.2012).

While Perry concedes that her psychological history may not be relevant to establishing retaliation in violation of the FMLA, she nonetheless argues that her history of psychological trauma and accompanying medical records are relevant because they go directly to establishing the first element of her case – that she suffered from a serious health condition warranting FMLA leave. Importantly, Defendant does not dispute that Perry suffered from a serious health condition and was entitled to FMLA leave. Information and medical records regarding Perry's

past psychological trauma are therefore irrelevant because the element of her claim to which they might be relevant, that of a serious health condition, is not in dispute. The information is of no consequence to her claim of FMLA retaliation, and thus irrelevant.

**B.**

Defendant Covenant also argues that Perry's psychological history and accompanying medical records are irrelevant to her claim under the PWDCRA. To establish a prima facie case of discrimination under the PWDCRA, a plaintiff must establish: (1) that she is disabled as defined by the PWDCRA; (2) that the disability is unrelated to her ability to perform the duties of her particular job; and (3) that she was discriminated against in one of the ways described in the statute. *Peden*, 680 N.W.2d at 863. Consistent with the tripartite analysis set forth in *McDonnell Douglas*, the defendant must then provide nondiscriminatory reasons for the adverse action. *Vorachek v. Security Federal Credit Union*, 2009 WL 4506440, at *3 (E.D. Mich. Dec. 1, 2009).

Information and medical records regarding Plaintiff's psychological history are irrelevant to her PWDCRA claim for the same reason they are irrelevant to her FMLA claim: Defendant concedes that Perry was disabled under the PWDCRA. Perry's psychological history therefore will not make her claim of disability any more probable, nor is it of any consequence in determining this action. While her specific diagnoses of post-traumatic stress disorder and bipolar disorder remain relevant, the incidents and records underlying those diagnoses are not relevant, and therefore inadmissible.

**III.**

Accordingly, it is **ORDERED** that Defendant's motion in limine, ECF No. 26, is **GRANTED**.

It is further **ORDERED** that evidence concerning Plaintiff's past psychological trauma and her accompanying medical records are **EXCLUDED**.

It is further **ORDERED** that the trial is **RESCHEDULED** for **June 14, 2016 at 8:30 a.m. before the Honorable Thomas L. Ludington.**

Dated: May 18, 2016                                     s/Thomas L. Ludington
                                                        THOMAS L. LUDINGTON
                                                        United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 18, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---